**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| S.W. and J.W. o/b/o J.J.W.,<br><br>Plaintiffs,<br><br>v.<br><br>ELIZABETH BOARD OF EDUCATION,<br><br>Defendant. | Case No. 2:21-cv-11510 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Elizabeth Board of Education's ("District") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 14.) Plaintiffs S.W. and J.W. ("Plaintiffs") opposed (ECF No. 18), and the District replied (ECF No. 19). Also before the Court is Plaintiffs' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 15.) The District opposed (ECF No. 17), and Plaintiffs replied (ECF No. 20). Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the District's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

**I.    BACKGROUND**

This matter arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:1-2 as

an appeal from the final administrative decision of the Honorable Kelly J. Kirk, New Jersey Administrative Law Judge ("ALJ"), issued on February 19, 2021. (Compl. (ECF No. 1).)

In their motions for summary judgment, the parties dispute whether the District denied Plaintiffs' child, J.J.W., a free and appropriate public education ("FAPE") by failing to provide him with "door-to-door" transportation services. (District's Mot. Br. (ECF No. 14-2); Pls.' Mot. Br. (ECF No. 15-1).)

### A.  Statutory Background

As an initial matter, the Court sets forth the relevant statutes and various legal terms that underly the dispute and form the basis of this Opinion.

#### 1.  IDEA

The IDEA, formerly known as the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.*, provides federal funding to assist state and local agencies in educating disabled children. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). An Individualized Education Program ("IEP") is "[t]he 'primary vehicle,' for providing each eligible student with an IDEA-mandated FAPE[.]" *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir. 2021) (internal citations omitted). "An IEP is a written statement, 'developed, reviewed, and revised' by the 'IEP Team'—a group of school officials and the parents of the student—that spells out how a school will meet an individual disabled student's educational needs." *Id.* (quoting 20 U.S.C. § 1414(d)(1)(A), (B)). "[A]n IEP describes a child's 'present levels of academic achievement,' offers 'measurable annual goals' to 'enable the child to . . . make progress in the general educational curriculum,' and describes 'supplementary aids and

services . . . provided to the child' to meet those goals." *Id.* (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II)(aa), (IV)). Pursuant to the IDEA, a FAPE requires the provision of "related services" when it is necessary to enable a child with a disability to benefit from his education. 20 U.S.C. § 1401(9). Relevant here, transportation is a "related service" under the IDEA. 20 U.S.C. § 1401(26)(A).

New Jersey has enacted legislation and regulations adopting the language, purpose, and goals of the IDEA. *See* N.J. Stat. Ann. § 18A:46-1 to -46; N.J. Admin. Code § 6A:14-1.1 to -10.2. Transportation "shall be provided to a student with a disability when required for the student to benefit from the educational program." N.J. Admin. Code § 6A:14-3.9; *see* N.J. Admin. Code § 6A:14, App'x B. The New Jersey Administrative Code requires transportation be provided in accordance with a student's IEP. N.J. Admin. Code § 6A:27-1.3.

The IDEA includes a "stay put" rule, Section 1415(j), which provides "an automatic preliminary injunction," requiring the maintenance of a child's "current educational placement" pending any disputes, "reflecting Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over [the] IEP is resolved[.]" *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014) (internal citations omitted) (quoting *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996); *Pardini v. Allegheny Interm. Unit*, 420 F.3d 181, 190 (3d Cir. 2005)).

### 2. Section 504

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 "requires school districts receiving

federal funding to provide a FAPE to each qualified handicapped person within the recipient's jurisdiction." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 274 (3d Cir. 2014). Providing a FAPE in accordance with Section 504 requires a school district to "reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012).

"The IDEA and § 504 of the Rehabilitation Act do similar statutory work." *P.P. ex rel Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009) "[Section] 504's 'negative prohibition' [against disability discrimination] is similar to the IDEA's 'affirmative duty'" to provide a FAPE. *Ridley*, 680 F.3d at 280 (quoting *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995)). A school district's provision of a FAPE is dispositive of a plaintiff's claims under both the IDEA and Section 504. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 254 n.8 (3d Cir. 2012).

### B. Factual Background

#### 1. J.J.W.'s Initial IEP

J.J.W. is a student with a disability who receives special education services and lives on a dead-end street in Elizabeth, New Jersey. (District's Statement of Material Facts ("SMF") (ECF No. 14-3) at ¶¶ 1, 10; Pls.' Resp. to District's SMF (ECF No. 18-1) at ¶¶ 1, 10.) For the 2017–2018 and 2018–2019 academic school years, J.J.W. attended special education preschool within the District's jurisdiction. (ECF No. 14-3 at ¶ 2; ECF No. 18-1 at ¶ 2.) During those school years, J.J.W.'s Individualized Education Plan ("Initial IEP") reflected the related service of transportation as "door-to-door." (Pls.' SMF (ECF No. 15-2) at ¶¶ 4, 5; District's Resp. to Pls.' SMF (ECF No. 17-3) at ¶¶ 4, 5.) Despite this provision in the Initial IEP, each summer prior to the start of the school year, Plaintiffs received a letter from the District designating the bus stop location on the

corner of Plaintiffs' dead-end street—and not Plaintiffs' home—as J.J.W.'s bus stop. (ECF No. 14-3 at ¶ 5; ECF No. 18-1 at ¶ 5.) The parties did not discuss the inclusion of transportation, door-to-door or otherwise, in the Initial IEP. (ECF No. 14-3 at ¶ 7; ECF No. 18-1 at ¶ 7.) The parties also did not discuss the discrepancy between the letters and the Initial IEP, and, during the 2017–2018 and 2018–2019 academic school years, the school bus, which was operated by a third-party contractor hired by the District, picked up and dropped off J.J.W. in front of his home. (ECF No. 14-3 at ¶¶ 6, 12; ECF No. 18-1 at ¶¶ 6, 12.)

### 2. The June IEP

As part of a June 21, 2019 IEP reevaluation meeting, J.J.W.'s 2019 IEP was developed and, consistent with the Initial IEP, identified J.J.W.'s related service of transportation as door-to-door (the "June 2019 IEP"). (ECF No. 14-3 at ¶ 3; ECF No. 18-1 at ¶ 3.) As before, the parties did not discuss transportation, door-to-door or otherwise, during that reevaluation meeting. (ECF No. 14-3 at ¶ 7; ECF No. 18-1 at ¶ 7.) Despite the door-to-door transportation provision in the June 2019 IEP, the District sent Plaintiffs a letter in August 2019 stating J.J.W.'s bus stop would be at the corner. (ECF No. 14-3 at ¶ 4; ECF No. 18-1 at ¶ 4.)

Kindergarten commenced for J.J.W. in September 2019, and his bus route changed from contractor to District driver. (ECF No. 14-3 at ¶¶ 12, 14; ECF No. 18-1 at ¶¶ 12, 14.) The District driver would not enter the dead end; instead, the District driver would stop at the bus stop assigned to J.J.W. at the corner intersection of Plaintiffs' dead-end street and the cross street, which is eight houses from Plaintiffs' home. (ECF No. 14-3 at ¶¶ 12, 13; ECF No. 18-1 at ¶¶ 12, 13.)

On September 6, 2019, S.W. emailed the District contending the IEP clearly stated J.J.W.'s transportation was to be door-to-door, which had not taken place, and the District's letters regarding the corner bus stop did not reflect what was agreed upon in the IEP. (ECF No. 14-3 at

¶ 8; ECF No. 18-1 at ¶ 8.) The parties exchanged multiple emails, but Plaintiffs' attempts to reinstate J.J.W.'s door-to-door transportation services were unsuccessful. (ECF No. 15-2 at ¶¶ 15, 16; ECF No. 17-3 at ¶¶ 15, 16.)

On September 13, 2019, Plaintiffs filed a complaint with the Office of Special Education Policy and Dispute Resolution of the New Jersey Department of Education ("SPDR") alleging the District "did not provide required transportation services specified in the student's [IEP], specifically door to door transportation." (Cert. of Richard P. Flaum Esq. in Support of District's Mot. ("Flaum Cert."), Ex. 5, SPDR "Complaint Investigation Report" (ECF No. 14-5) at 50 of 54.) On November 19, 2019, SPDR filed a Complaint Investigation Report, finding:

> The IEP does not contain any information or restrictions that would warrant extraordinary transportation provisions for the student based on the student's educational disabilities. The SPDR does not have the authority to amend, or waive standard traffic safety regulations. There are a number of reasonable accommodations that might be explored by the parties, including but, not limited to, enrollment of the student in the breakfast program at the school, aide in lieu [of] compensation to the parent to transport the student in the morning, consultation by a behavioral specialist to assist the parent in developing a morning routine to assist the student in riding the bus without emotional distress. Once the district staff became aware of the traffic safety concerns preventing a bus pick up or drop off directly in front of the home, the IEP team should have consulted with the parents and either amended the IEP without a meeting or reconvened the IEP team to discuss additional modifications needed to help the student adjust to the new transportation arrangement. Therefore, the district is determined non-compliant with the implementation of the IEP as written and corrective action is required.

(*Id.* at 52–53 of 54.) SPDR directed the District to invite Plaintiffs to an IEP meeting "for the purpose of conducting further discussions regarding transportation, as a related service, for the student and implementing any mutually agreed upon accommodations." (*Id.* at 53 of 54.)

6

### 3. The December 2019 IEP

On December 17, 2019, Plaintiffs attended the IEP meeting where the District proposed to officially change J.J.W.'s transportation services from "door-to-door" to "station." (ECF No. 14-3 at ¶¶ 17, 18; ECF No. 18-1 at ¶¶ 17, 18.) Plaintiffs did not agree with these proposed transportation services and filed for due process on or about January 2, 2020, seeking a determination the District denied J.J.W. a FAPE by failing to provide him with door-to-door transportation services and seeking compensatory education. (ECF No. 14-3 at ¶ 19; ECF No. 18-1 at ¶ 19.)

### 4. Due Process Decision

The ALJ received two days of testimony and evidence during hearings held on September 30, 2020 and October 7, 2020. (Flaum Cert., Ex. 5, "Final Decision" (ECF No. 14-5) at 19 of 54.) Three witnesses testified on behalf of Plaintiffs, and five witnesses testified on behalf of the District. (*Id.*) J.J.W.'s mother testified that while J.J.W. was in preschool, she walked him out to the driveway holding his hand and put him on the bus. (*Id.* at 34 of 54.) J.J.W. did not take the bus on the first day of the 2019–2020 school year because the bus failed to show at their home. (*Id.* at 35 of 54.) The following day, when the bus again failed to show, she came to understand that the bus was coming to the corner. (*Id.*) Thereafter, Plaintiffs drove J.J.W. to the corner where he sat in the car until the bus arrived and physically placed him on the bus in the custody of the bus aide. (*Id.* at 35–36 of 54.) In the afternoon, Plaintiffs either picked him up or met him at the corner. (*Id.* at 37 of 54.) On February 19, 2021, the ALJ rendered a Final Decision, making several findings, including:

- Neither the June 2019 IEP nor the December 2019 IEP reflected concerns relative to J.J.W.'s escape or elopement, and prior to September 2019, there were no child study team discussions about transportation requirements. (*Id.* at 43 of 54.)

- Plaintiffs received a letter from the District each summer J.J.W. was a student in the District designating the street corner, and not Plaintiffs' home, as his bus stop. There was no evidence Plaintiffs contacted the District about a discrepancy between the letter and the IEP, suggesting there had been no expectation of a "home" stop. (*Id.*)

- Due to safety concerns, the District has a policy against a bus stop on a dead-end street because that would require "backing" the bus. This policy is reasonable and consistent with Department of Transportation and New Jersey Motor Vehicle Commission guidelines related to safety and school buses. (*Id.* at 20, 44 of 54.)

The ALJ further found:

> [T]here is simply no evidence that door-to-door transportation was specifically discussed, and as a result included as such in the IEP, or evidence that it was required. To the contrary, S.W. testified that she was surprised, but happy, that door-to-door was in the IEP because it would help her out. Further, the evaluations and reports, as well as testimony of the District's witnesses, all reflect that [J.]J.W. can handle transitions after routines are established and reinforcers are identified, and his behaviors do not prevent him from being picked up from or dropped off at the corner bus stop. This is supported by the fact that [J.]J.W. was transported to school primarily by bus after September 2019 and, irrespective of the reason, was absent a total of only eight or nine times over an approximately five and half month period . . . .

(*Id.* at 44 of 54.) The ALJ concluded the District did not deny J.J.W. a FAPE. (*Id.* at 45 of 54.) She explained:

> Although the IEPs all reflected "door-to-door," the Transportation Department letters all reflected that the bus stop was at the corner. Assuming *arguendo*, for purposes of the due-process petition, that door-to-door means to/from the student's home and not a bus stop, by virtue of "stay put" the District would have been required to transport [J.]J.W. to/from his home, rather than a bus stop, pending a final decision on the due-process petition. There is no dispute that [J.]J.W. was not transported to/from his home. However, the District provided [J.]J.W. with transportation to and from school for the duration of the 2019–2020 in-school school year, and the evidence reflects that [J.]J.W. was transported to and from school on the school bus, albeit from the corner bus stop. Thus, [J.]J.W. had access to education. Certainly, an at-home bus stop may be preferable for any student, with or without an IEP, but there was no evidence, such

8

> as medical evidence, that an at-home stop was required for [J.]J.W. to access an appropriate education.

(*Id.*) On May 19, 2021, Plaintiffs appealed the ALJ's decision by filing a Complaint against the District contending the District violated the IDEA (Count One), Section 504 (Count 2), and the NJLAD (Count 3). (ECF No. 1.) On December 13, 2021, the District and Plaintiffs each filed a Motion for Summary Judgment (ECF Nos. 14, 15.) The parties filed their respective oppositions on January 14, 2022 (ECF Nos. 17, 18) and filed their replies on January 31, 2022 (ECF Nos. 19, 20).

## II.    LEGAL STANDARD

The standard of review in an administrative appeal under the IDEA differs from the standard of review governing a typical summary judgment motion. *See M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003). "When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). "Under this standard, 'factual findings from the administrative proceedings are to be considered prima facie correct,' and 'if a reviewing court fails to adhere to them, it is obliged to explain why.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003)). "In addition, if a[n ALJ] has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight." *Id.* (citation omitted). In other words, "a District Court must accept the [ALJ]'s credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.'" *Id.* (citation omitted). "[T]he

9

party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley*, 680 F.3d at 270. "Applying these standards, the district court may make findings 'based on the preponderance of the evidence[.]'" *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011) (quoting *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010)).

### III.   DECISION

The ALJ concluded "transportation to and from the corner bus stop rather than from [J.]J.W.'s home did not rise to the level of a denial of FAPE, did not significantly impede the parents' opportunity to participate relative to his education, and did not cause a deprivation of educational benefits." (ECF No. 14-5 at 45 of 54.) Plaintiffs move for summary judgment on the basis that this conclusion ignored the substantive and procedural violations of the IDEA occasioned by the District's unilateral alteration of J.J.W.'s transportation, resulting in a deprivation of a FAPE for J.J.W. (ECF No. 15-1 at 11–21.) Plaintiffs further contend their filing of a petition in the OAL triggered the "stay put" provision of the IDEA such that J.J.W. should have been provided door-to-door transportation during the pendency of the legal proceedings. (*Id.* at 21–23.) Finally, Plaintiffs argue the District violated the IDEA because it failed to conduct any evaluations to establish J.J.W. no longer needed door-to-door transportation prior to changing the transportation services from door-to-door to the bus stop in the December 2019 IEP. (*Id.* at 17–21.)

The District moves for summary judgment to affirm the ALJ's Final Decision and dismissing Plaintiffs' claims arising under the IDEA, Section 504, and the NJLAD. (ECF No. 14-2.) The District argues J.J.W. was not denied a FAPE when the District modified the location of his bus stop from door-to-door to the corner of his dead-end street. (*Id.* at 6–12.)

The Court addresses the District's actions in connection with the June 2019 IEP and the December 2019 IEP, the applicability of the "stay put" provision, and Plaintiffs' NJLAD claims separately. Reviewing the legal issues *de novo* and according the ALJ's factual determinations due weight, the Court agrees with the well-reasoned decision of the ALJ and finds the District did not deprive J.J.W. of an FAPE.

### A. Plaintiffs' claims under the IDEA[1]

A substantive violation arises under the IDEA where the IEP's *content*, such as the educational services, is insufficient to afford the student a FAPE, while a procedural violation occurs when the school district fails to comply with the *processes* required by the IDEA. *A.K. ex rel J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n.7 (4th Cir. 2007); *see ASAH, The Children's Inst. v. N.J. Dep't of Educ.*, Civ. A. No. 16-3935, 2017 U.S. Dist. LEXIS 101736, at *30 n.10 (D.N.J. June 30, 2017) ("A procedural violation generally concerns the process by which the IEP and placement offer was developed and conveyed; on the other hand, a substantive violation arises from a deficiency in the programming being offered.") (quoting *P.K. ex rel. S.K. v. N.Y. City Dep't of Educ.*, 819 F. Supp. 2d 90, 105 (E.D.N.Y. 2011)).

Where neither the content nor the development of an IEP is at issue, a party may nonetheless challenge the school district's implementation of the IEP. To prevail, "a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful

---

[1] Although Plaintiffs do not move for summary judgment on their Section 504 claims (ECF No. 15-1), the District in its motion seeks to have Plaintiffs' Section 504 claims dismissed (ECF No. 14-2). As discussed, finding the District did not deny J.J.W. a FAPE under the IDEA is equally dispositive of Plaintiffs' Section 504 claims. *D.K.*, 696 F.3d at 254 n.8. Because the Court concludes the District provided J.J.W. with a FAPE under the IDEA, it does not separately address Plaintiffs' Section 504 claims.

educational benefit." *Melissa S. v. Sch. Dist.*, 183 F. App'x 184, 187 (3d Cir. 2006) (quoting *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000)).[2] "Flexibility to implement an IEP is maintained, yet the school district is accountable for 'confer[ring] some educational benefit upon the handicapped child,' as required by the IDEA." *Id.* (alteration in original) (quoting *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982))).

1. **The June 2019 IEP**

Plaintiffs do not challenge the content of the June 2019 IEP, and so have asserted no substantive challenge to the June 2019 IEP. Nor do Plaintiffs challenge the procedures followed to develop the June 2019 IEP. As a result, the Court views the issue as a question of whether the District failed to properly implement the June 2019 IEP when its bus driver picked up J.J.W. at the corner rather than in front of his house, and, if so, with what consequence. Applying the standard articulated by the Third Circuit in *Melissa S.*, the Court concludes the District failed to implement the transportation provision of the June 2019 IEP, but such failure was *de minimis* and did not deprive J.J.W. of a FAPE.

---

[2] The Third Circuit, in *Melissa S.*, affirmed a district court's grant of summary judgment in favor of a school district, finding, among other things, leaving the student without an aide did not constitute a failure to implement the student's IEP. 183 F. App'x at 185–86. The district court determined a reasonable jury could not find a failure to implement because of a lack of evidence of non-implementation. *Id.* at 187. The district court found that on days when an aide could not be provided, the parent was notified by the school and told to keep the student home for the day. *Id.* The Third Circuit held, "Even assuming that [the parent]'s allegation that this occurred 'several' times is correct, this is not the kind of substantial or significant failure to implement an IEP that constitutes a violation of the IDEA." *Id.*

The ALJ found J.J.W. was not transported to or from the front of his home[3] but was nonetheless provided transportation by the District from the corner and had access to education. (ECF No. 14-5 at 45 of 54.) The Court agrees. The IDEA provides the District with flexibility to implement an IEP, and such flexibility is necessary here, where traffic safety concerns—for those inside and outside the school bus alike—are implicated. Plaintiffs argue despite their objections, the ALJ's admission of the District's "partial commercial driver's manual" into evidence was committed in error because it did not relate to the type of bus that could have been used to pick up J.J.W. (ECF 15-1 at 23–27.) However, the ALJ found the District's Director of Transportation credibly testified due to safety concerns, the District's policy is never to have a bus stop on a dead-end street, as such would require "backing" the bus, regardless of the type of bus. (ECF 14-5 at 44 of 54.) The parties do not dispute the summer prior to the start of each school year, Plaintiffs received a letter from the District indicating J.J.W.'s pick-up/drop-off location was the corner. (ECF No. 14-3 at ¶¶ 4, 5; ECF No. 18-1 at ¶¶ 4, 5; ECF No. 14-5 at 45 of 54.) The Court does not disturb the ALJ's conclusion J.J.W. had access to education because there is no evidence to challenge her determination the District has a policy prohibiting school buses on dead-end streets and that policy is both reasonable and supported by Department of Transportation and Motor Vehicle Commission guidance.

The ALJ also found "no evidence, such as medical evidence, that at an at-home stop was required for J.J.W. to access an appropriate education." (ECF No. 14-5 at 45 of 54.) Plaintiffs

---

[3] Plaintiffs argue, by holding the District provided J.J.W. with a FAPE, the ALJ overlooked the SPDR's determination the District was in non-compliance with J.J.W.'s IEP. (ECF No. 15-1 at 14–16.) To the contrary, consistent with the SPDR's conclusion, the ALJ concluded in the Final Decision the District did not provide J.J.W. with door-to-door transportation. (ECF No. 14-5 at 45 of 54.) However, the SPDR did not conclude such action deprived J.J.W. of a FAPE. (*Id.* at 52–53 of 54.) Accordingly, the ALJ did not violate principles of res judicata.

argue that, by virtue of door-to-door transportation being included in the Initial IEP, the ALJ ignored the medical evidence establishing J.J.W. required door-to-door transportation. (ECF No. 15-1 at 30.) Plaintiffs contend the District failed to rebut their expert's hearing testimony that J.J.W. continues to require door-to-door transportation. (*Id.*) Neither argument is persuasive. The ALJ considered and weighed the testimony of eight witnesses—including Plaintiffs' expert—and various documentation, including a June 2019 psychological evaluation, before determining no medical evidence had been presented to require an at-home stop. (ECF No. 14-5 at 47 of 54.) Stating this conclusion differently, the medical and other evidence reviewed by the ALJ did not undermine the appropriateness of a corner bus stop for J.J.W. Moreover, Plaintiffs mischaracterize their expert's opinion as "requiring" an at-home stop when she instead testified J.J.W. would be able to adjust, with time and assistance, to the corner bus stop. (ECF No. 14-5 at 40 of 54.) This is borne out by J.J.W.'s regular attendance at school during the relevant five-month period with only six or seven absences and the meaningful progress he achieved in his education program during that time.[4] As a consequence, the Court concludes door-to-door transportation was neither a substantial nor significant provision in the June 2019 IEP, and the District's failure to provide door-to-door transportation was de minimis. Accordingly, the District did not deprive J.J.W. of a FAPE when it failed to implement the June 2019 IEP's transportation provision exactly as written.

---

[4] S.W. testified before the ALJ that there were a few days J.J.W. was absent from school because she was working and in flux. (ECF No. 14-5 at 36 of 54.) Plaintiffs do not challenge the education services provided to J.J.W. after he arrived at school, and their Complaint makes no allegations relative to academic progress. (ECF No. 1.) The ALJ's Final Decision reported J.J.W. was making progress on his goals and objectives. (ECF No. 14-5 at 33 of 54.)

### 2. The December 2019 IEP

Plaintiffs contend the District's failure to conduct a reevaluation prior to changing J.J.W.'s transportation services in the December 2019 IEP constitutes a procedural violation of the IDEA. (ECF No. 15-1 at 17–20.) The District argues it was not required to reevaluate J.J.W. or provide additional evaluations as a prerequisite to revising his IEP. (ECF No. 17 at 11–15.) The Court concludes the District did not commit a procedural violation of the IDEA when it revised the December 2019 IEP without a reevaluation.

The IDEA sets out a variety of procedures to be followed in the revision of an IEP. A school district has an affirmative duty to review, at least annually, an eligible child's IEP "to determine whether the annual goals for the child are being achieved" and revise the IEP to address, among other things, the results of any reevaluation or "other matters." *See, e.g.*, 20 U.S.C. § 1414(d)(2)(A), (4)(A); 34 C.F.R. §§ 300.323(a), 300.324(b)(1). Stated differently, nothing in the IDEA requires reevaluation as a prerequisite to the revision of an IEP. *M.A. v. Jersey City Bd. of Educ.*, Civ. A. No. 13-06946, 2014 U.S. Dist. LEXIS 35853, at *18 (D.N.J. Mar. 18, 2014).

School districts are generally required, under the IDEA and New Jersey law, to conduct a triennial reevaluation of an eligible student. 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303; N.J. Admin. Code § 6A:14-3.8. Beyond that, a reevaluation is required only if the child's parents or teacher request a reevaluation or the school district determines that the education or related services needs of the child warrant a reevaluation. 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303; N.J. Admin. Code § 6A:14-3.8.

Here, the District determined a reevaluation was not warranted (ECF No. 17 at 13), and there is no evidence Plaintiffs or a teacher requested a reevaluation. The District is statutorily authorized to revise J.J.W.'s IEP, without a reevaluation, to address "other matters." *See, e.g.*,

15

20 U.S.C. § 1414(d)(2)(A), (4)(A); 34 C.F.R. §§ 300.323(a), 300.324(b)(1). In the absence of necessity for door-to-door transportation identified in the June 2019 IEP or its supporting documents,[5] the District was free to revise the IEP in December, without a reevaluation, to address the conflict between the door-to-door transportation provision and the District's traffic safety policy. Accordingly, the District's failure to conduct a reevaluation did not deprive J.J.W. of a FAPE.

### 3. The "Stay Put" Rule

Plaintiffs argue the District violated the "stay put" provision of the IDEA when, following Plaintiffs' January 2020 due process petition to challenge the December 2019 IEP's transportation provision, the District failed to provide J.J.W. with the door-to-door transportation services contained in the June 2019 IEP, his operative program. (ECF No. 15-1 at 22.) The District, relying on the Third Circuit's decision in *DeLeon v. Susquehanna Community School District*, 747 F.2d 149 (3d Cir. 1984), argues no change was made to J.J.W.'s educational placement as to trigger the "stay put" provision. (ECF No. 17 at 17–18.) The Court agrees with the District.

Section 1415(f) of the IDEA entitles parents to "an impartial due process hearing" with respect to any complaint presented to the school district concerning provision of a FAPE to a child. 20 U.S.C. § 1415(b)(6). The "stay put" provision of the IDEA, 20 U.S.C. § 1415(j), mandates "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in [his or her] then-current educational placement[.]" A court looks to a child's "existing

---

[5] The ALJ found neither the June 2019 IEP nor the December 2019 IEP reflected any concerns warranting door-to-door transportation, and, prior to the December 2019 IEP, there were no discussions about a door-to-door requirement. (ECF No. 14-5 at 43 of 54.) The ALJ's findings are consistent with SPDR's determination "[t]he IEP does not contain any information or restrictions that would warrant extraordinary transportation provisions for the student based on the student's educational disabilities." (*Id.* at 52 of 54.)

IEP to determine a child's 'then-current educational placement[.]'" *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 140 (3d Cir. 2013). To determine whether there has been a change in the child's educational placement triggering the "stay put" program, the Third Circuit has instructed courts to inquire into whether the school district's unilateral change "is likely to affect in some significant way the child's learning experience." *DeLeon*, 747 F.2d at 153. Plaintiffs are required to "identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program[.]" *M.K. v. Roselle Park Bd. of Educ.*, Civ. A. No. 06-4499, 2006 U.S. Dist. LEXIS 79726, at *26–27 (D.N.J. Oct. 31, 2006) (quoting *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)). The Third Circuit recognized "the 'stay put' provision does not entitle parents to the right to demand a hearing before a minor decision alters the school day of their children." *DeLeon*, 747 F.2d at 153.

Applying this approach in *DeLeon*, the Third Circuit determined, while "transportation may have a significant effect on a child's learning experience" under some circumstances, there was no significant effect when transportation by a parent was replaced with transportation by a stranger, and the length of time to be spent in transit was increased by ten minutes. *Id.* at 154.

Here, Plaintiffs argue the District changed J.J.W.'s placement by changing J.J.W.'s transportation from door-to-door to the corner in the December 2019 IEP. This change is sufficiently like the school district's change to the student's transportation in *DeLeon* as to warrant a similar conclusion. The ALJ adduced no evidence pick-up/drop-off from the corner eight houses down from J.J.W.'s home, rather than from in front of his home, had a significant effect on J.J.W.'s learning experience. The Court concludes there was no change in J.J.W.'s educational placement and holds the District did not violate the "stay put" provision of the IDEA.

17

Because the Court concludes the District's actions in connection with the June 2019 IEP and the December 2019 IEP did not deprive J.J.W. of a FAPE or violate the IDEA's "stay put" provision, the District's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**, as to Plaintiffs' IDEA and Section 504 claims.

### B. Plaintiffs' Claims Under the NJLAD

As discussed, summary judgment is granted to the District for Plaintiffs' IDEA and Section 504 claims. These claims formed the basis of the Court's subject matter jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under the NJLAD. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

### IV. CONCLUSION

For the reasons set forth above, the District's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**, as to Count One (claims under the IDEA) and Count Two (claims under Section 504) of Plaintiffs' Complaint. Accordingly, Plaintiffs' IDEA and Section 504 claims are **DISMISSED with prejudice**. The Court declines to exercise supplemental jurisdiction over the remaining state law claim. Therefore, Count Three of Plaintiffs' Complaint (claims under the NJLAD) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: March 17, 2022